IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| OSMOSE UTILITIES SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO: |
| | ) | |
| v. | ) | |
| | ) | |
| ROBIN MCDANIEL, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Osmose Utilities Services, Inc. ("Osmose") files this Complaint for Injunctive Relief and Damages against Defendant Robin McDaniel, and respectfully shows this Court as follows:

### INTRODUCTION

McDaniel is a former Director of Business Development at Osmose. Immediately after resigning from Osmose, McDaniel began working for Quanta Utility Engineering Services ("QUES"), a direct competitor of Osmose. As set forth herein, McDaniel's actions in doing so directly violates her Non-disclosure, Non-competition, Non-Solicitation and Intellectual Property Agreement with Osmose dated August 4, 2020 ("Agreement"). Incredibly, she joined QUES while she was actively working on several multi-million dollar bids on behalf of Osmose for one

of Osmose's largest customers in McDaniel's territory ("Customer A"). The bidding process for Customer A is still ongoing. In these bids, Osmose is attempting to win back work for Customer A in which QUES is currently the incumbent and also a bidding party. Upon information and belief, McDaniel has and is soliciting Customer A and is also using Osmose's trade secrets and/or other confidential information for the benefit of QUES in further violation of the Agreement. Osmose brings this action to enjoin further violative conduct by McDaniel and for the damages already caused by such conduct.

**PARTIES, JURISDICTION, AND VENUE**

1.

Osmose is a corporation incorporated under the laws of Delaware with its principal place of business in Peachtree City, Georgia.

2.

McDaniel is a resident of Alabama. McDaniel may be served with process at her residence or wherever she may be found.

3.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and the parties are diverse. Osmose seeks injunctive relief pursuant to Federal Rule

2

of Civil Procedure 65, the value of which exceeds $75,000. The damages associated with McDaniel's breach of the Agreement, including lost business, lost profits, damage to goodwill, and reasonable costs and attorneys' fees also exceed $75,000.

4.

This Court has personal jurisdiction over McDaniel because McDaniel consented to this Court's jurisdiction in paragraph 14 of the Agreement.

5.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 because it is the district agreed upon by the parties in paragraph 14 of the Agreement and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## STATEMENT OF FACTS

### BACKGROUND REGARDING OSMOSE

6.

For more than 85 years, Osmose has serviced the utility and telecommunication industries by providing technically trained work crews that perform and provide inspections, maintenance, repairs, products, and engineering on utility and telecommunication structures.

7.

Osmose crews work across the country, whether on city streets or country roads, in swamps or rivers, or on mountains. Osmose makes utility and telecommunication structures safer and more reliable to keep America safely connected and powered.

8.

Osmose provides cost-effective solutions regarding wood and steel utility and telecommunication structures. It uses data-based solutions, engineering and analytics in the areas of wood science, steel corrosion, asset management and structure restoration, which lowers the cost of ownership, extends the lifespans of customer assets, and makes systems stronger and safer.

9.

The utility and telecommunication services industries are highly competitive businesses that are relationship-driven between customers and providers like Osmose. Through hard work, dedication, innovation, investment and proprietary intellectual property, Osmose has become a market leader in these industry.

10.

Osmose invests heavily in developing and maintaining its customer relationships. Its success in these highly competitive industries is directly dependent

on its employees' knowledge of its customers' unique needs and requirements and Osmose's ability to provide top quality technology, services, and new innovative solutions to its customers. Osmose has and is currently developing pilot programs to meet its customers' needs that are unique and often involve evolving its current practices and offerings. McDaniel, on behalf of Osmose, recently assisted in developing and proposing such a pilot to Customer A.

11.

Osmose's business development employees receive substantial training, information, business contacts, and other advantages that provide Osmose with a competitive edge in the marketplace, including valuable proprietary information about Osmose's intellectual property, methodologies, technology, business practices, long-term and short-term strategy, and pricing terms. Osmose's offerings are specially tailored from customer to customer, so the strategies employed to develop programs and win work are trade secrets and highly proprietary.

12.

Further, these business development employees, particularly at the Director level, work with all manner of confidential information, including customer data; information regarding Osmose's processes and procedures for winning business,

5

performing work and estimating jobs; prices; and employee information, such as compensation and performance metrics.

## MCDANIEL IS HIRED AND SIGNS THE AGREEMENT

13.

In August 2020, Osmose hired McDaniel as a Director of Business Development.

14.

A Director of Business Development is generally responsible for a particular territory, which usually comprises several states. A territory's Director of Business Development is responsible for direct sales of all Osmose services and products in the closely connected utility and telecommunication markets in that territory.

15.

McDaniel was the Director of Business Development for several states in the Southeast, which at the time of her termination included, but were not limited to, Alabama, Georgia, Tennessee, South Carolina, Mississippi, North Carolina, Florida, and Illinois.

16.

As part of McDaniel's duties at Osmose, she worked directly with Osmose's customers throughout her territory to establish and maintain key relationships with

contacts at various levels inside each customer and to improve existing and generate new business opportunities. McDaniel was one of Osmose's top business development representatives, overseeing some of Osmose's largest and oldest accounts, including accounts with multiple operating companies. McDaniel was hired by Osmose and assigned to specific customers, including Customer A, due to her representations to Osmose that she could build relationships and develop business with those customers, particularly Customer A. McDaniel was hired on the strength of her representations that she could also win back certain work with Customer A after Osmose was outbid by QUES in the previous Request For Proposal ("RFP") by Customer A.

17.

Upon McDaniel's employment with Osmose, McDaniel and Osmose executed the Agreement dated August 4, 2020. A true and accurate copy of the executed Agreement is attached as Exhibit A.

18.

Paragraph 1 of the Agreement (the "Non-disclosure Provision") provides:

Employee shall not, without Employer's express written permission, reveal or otherwise make available to any other person any trade secrets or other confidential information concerning the Employer's business. Trade secrets and confidential information shall include, but not be limited to, information concerning the make-up or formulas of Employer's products, Employer's customer lists, costs, pricing

information, patterns, compilations, programs, devices, tools, methods, computer data, drawings (engineering or otherwise), techniques or processes that (i) derive an independent economic value, actual or ascertainable by proper means, by other persons who can obtain economic value from this disclosure or use; and (ii) is the subject of efforts of the Employer that are reasonable under the circumstances to maintain its secrecy.

19.

Section 3 of the Agreement (the "Non-compete") provides:

During the period of two (2) years immediately following the expiration or termination of Employee's employment for any reason, Employee will not, either directly or indirectly, assist, engage in or be financially interested in any other business activity similar to or in competition with Employer's business or any part thereof in any state Employee worked for the Employer including but not limited to: Alabama, Georgia.

20.

Section 4 of the Agreement (the "Non-solicitation") provides:

During the period beginning on the date of this Agreement and ending two (2) years after the termination or expiration of Employee's employment for any reason, Employee will not, either directly or indirectly, (a) sell or attempt to sell any products or services competitive with Employer's products or services to any customer of Employer with whom Employee had material business dealings at any time during the last two (2) years of Employee's employment with Employer, or (b) suggest, advise or attempt to persuade any such customer to limit or discontinue its business with Employer.

21.

In paragraph 7 of the Agreement, McDaniel agreed that any breach of the Non-disclosure Provision, Non-solicitation, or Non-compete "would result in irreparable injury to Employer for which it could not be adequately compensated by money damages." McDaniel further agreed that Osmose "shall therefore be entitled to an injunction, in addition to, but not in substitution of, all other legal remedies available to Employer, to be issued by any court of competent jurisdiction enjoining and restraining Employee from any violation or further violation of said covenants or any part thereof."

22.

The Agreement also provides that Osmose "shall be entitled to reasonable attorney's fees, costs and necessary disbursements" if it prevails in any action "necessary to enforce or interpret any of the rights or obligations under th[e] Agreement."

23.

Osmose has legitimate business interests supporting the Non-disclosure Provision, Non-solicitation, and Non-compete, including the protection of its trade secrets; the protection of its valuable confidential information that otherwise does not qualify as a trade secret; the preservation of substantial relationships with

specific prospective and existing customers; and customer goodwill associated with Osmose's ongoing business.

### MCDANIEL'S TERRITORY AND RESPONSIBILITIES

24.

As a Director of Business Development at Osmose, McDaniel worked directly with Osmose's customers throughout her territory to establish and maintain key relationships and business opportunities.

25.

McDaniel was one of Osmose's top business development representatives, with six large public utility and telecommunication accounts and $20-$25 million in annualized revenue. McDaniel's accounts are critical to Osmose's current and future strategic growth initiatives.

26.

The scope of work McDaniel performed for each of these accounts extended across multiple service lines and made up a material portion of Osmose's market share.

27.

McDaniel had direct and ongoing contact with Osmose's customers and business relationships.

28.

McDaniel had access to and worked with Osmose's trade secrets and other confidential information, including customer lists, strategic offerings, customer contracts, training materials and processes, internally developed materials and inspection/treatment/restoration aids, pricing and estimating methodologies, engineering strategies, services expansion, adjacency strategic growth, employee information, such as compensation and performance metrics, and other customer information.

29.

McDaniel also had access to material documents outlining pricing, strategies, pilot programs and new service offerings, strategic growth initiatives, market differentiators, contact lists, internal analyses, structure data, operational strategy, and scope of work specifications. Her work involved detailed information about Osmose's confidential bidding and pricing methodologies.

30.

McDaniel customarily and regularly engaged customers and potential customers to maintain and grow the business.

31.

As a Director of Business Development, McDaniel was in a customer-facing sales role with large, publicly owned companies that generate millions in revenue for Osmose each year.

32.

McDaniel's role required her to promote any and all Osmose products and services directly to customers, including, but not limited to, structure inspection, structure restoration, overhead inspection (including drones), structure loading analysis, structure replacement design, stray voltage detection, emergency storm response work, padmount transformer inspection, steel tower inspection, steel tower restoration, substation assessment, joint use inspection and audit, NESC clearance inspection, infrared inspection, LiDAR structural modeling, pole pulling, asset verification and mapping, make ready design, underground inspection and maintenance, transmission tower inspection, structural engineering services, and confidential business initiatives and strategies, among others.

33.

McDaniel customarily and regularly engaged in enabling the sale of services to be performed by others.

34.

McDaniel gained a high level of influence or credibility with Osmose's customers, vendors, and other business relationships by reason of Osmose's investment of time, training, and money and as a result of exposure to customers, vendors, and other business relationships during the course of her employment.

35.

McDaniel was intimately involved in the planning for or direction of Osmose's business with respect to sales and marketing for her territory as well as Osmose's long-term national strategic growth.

36.

McDaniel came into possession of and obtained customer contacts and other customer information – including Customer A's expectations in the RFP process – by reason of having worked for Osmose.

### MCDANIEL RESIGNS AND JOINS A COMPETITOR

37.

McDaniel voluntarily terminated her employment with Osmose on October 7, 2022.

38.

McDaniel submitted her resignation to Osmose on September 21, 2022 in which she acknowledged her Non-compete and her intentions to comply with it.

39.

At the time she submitted her resignation, she informed Osmose that she was leaving to become a Vice President of an engineering firm that does not compete with Osmose.

40.

If McDaniel had informed Osmose that she was joining QUES, Osmose would have accepted her resignation effective immediately, and would not have permitted her to continue to access its confidential and proprietary information.

41.

However, as a result of her deliberate deception, Osmose permitted her to stay in her customer-facing role for the remainder of her notice period until October 7, 2022. During this time, McDaniel continued material misconduct, including, but not limited to, enrolling in a Customer A-sponsored event on behalf of QUES and communicating with Osmose customers about her potentially working with them in her new role while she was supposed to be working on behalf of Osmose.

42.

Contrary to her representations to Osmose, immediately after her employment with Osmose terminated, McDaniel joined QUES as a Director of Business Development, in a substantially similar position to her position at Osmose.

43.

QUES is a utility services provider, providing wood structure inspection, restoration, engineering and asset management for the electric utility and telecommunication industries and is a direct competitor of Osmose, as evidenced by QUES's participation in Customer A's current RFPs.

44.

McDaniel is performing the same or similar duties for QUES as she performed at Osmose as a Director of Business Development.  As such, her position at QUES is in direct violation of the Non-compete.

45.

Immediately prior to her resignation from Osmose, McDaniel was working on bids on behalf of Osmose for RFPs for multiple lines of business from one of Osmose's largest customers in McDaniel's territory, Customer A. This work involved using Osmose's highly confidential information, including its pricing

strategies, estimating methodologies, and growth strategy, including a pilot for expanding existing services.

46.

QUES is also responding to the same RFPs from Customer A to win the same work on which Osmose is bidding.

47.

As a result of McDaniel's knowledge of Osmose's confidential and proprietary information, Osmose is substantially concerned that McDaniel is using such information to unfairly compete with Osmose on behalf of QUES, including in the bidding process with Customer A.

48.

Prior to her resignation, McDaniel was also involved in preparing pricing for a highly confidential project involving new innovative service offerings, and she had access to Osmose's confidential and proprietary information including the pricing strategy, processes, and analyses related to the project.

49.

Osmose is substantially concerned that McDaniel is using such information to unfairly compete with Osmose on behalf of QUES by assisting QUES in similar projects.

50.

While she was still working at Osmose in September of 2022, McDaniel registered for a conference held by Customer A on behalf of QUES.

51.

The conference took place on October 11-12, 2022, just days after the voluntary termination of her employment at Osmose.

52.

In August 2022, and prior to submitting her resignation, McDaniel attended a Teams video or telephone conference with members of QUES management. The invite was submitted through her Osmose email.

53.

Upon information and belief, based on McDaniel's surreptitious activity, McDaniel is seeking to sell QUES's products or services in direct competition with Osmose to Customer A, and potentially other customers, in violation of the Non-solicitation.

## OSMOSE DISCOVERS THAT MCDANIEL MISAPPROPRIATED INFORMATION FROM OSMOSE

54.

After Osmose discovered McDaniel was violating her Non-compete through her employment with QUES, Osmose initiated an investigation to determine whether McDaniel had engaged in other misconduct.

55.

Osmose's investigation has included reviewing McDaniel's computer-related and e-mail activity.

56.

Osmose's investigation has revealed McDaniel engaged in other unlawful activities.

57.

On or around July 29, 2022, and around the same time Osmose received Customer A RFPs, McDaniel created and started using a folder on her Osmose laptop, labeled "[Customer A] Prior To Me," where she saved several confidential and proprietary Osmose documents related to Osmose's business with Customer A, including pricing and strategy documents and other highly sensitive documents related to Customer A's RFPs. This activity coincides with McDaniel updating her resume and is unusual because she previously saved and accessed documents that

were subsequently saved in the "[Customer A] Prior To Me" folder, in other folders on her computer. She last accessed this folder on September 7, 2022. The "[Customer A] Prior To Me" folder is no longer on McDaniel's Osmose laptop.

58.

On September 21, 2022 through the next day, McDaniel connected two USB devices to her Osmose laptop. These USB devices were connected for several hours each, one being connected to the laptop for nearly 22 hours. While one of the USB devices was connected, a folder titled "Osmose email" was saved to the USB device.

59.

The USB devices were not returned with McDaniel's Osmose laptop. Without access to the USB devices, Osmose is unable to determine what other documents McDaniel copied and took on the devices.

60.

Based on McDaniel's suspicious activity, Osmose is concerned that she may have copied the "[Customer A] Prior To Me" folder to a USB device or otherwise transferred the folder then deleted it from the laptop.

61.

On October 10, 2022, McDaniel informed Osmose that she was returning her Osmose laptop. However, she did not send her laptop back to Osmose until October

21, 2022. Upon information and belief, prior to returning her Osmose laptop, McDaniel attended a conference sponsored by Customer A on behalf of QUES. Customer A has still not awarded the work in response to its RFPs.

62.

Osmose is continuing its investigation into McDaniel's computer-related and e-mail activity.

## McDANIEL REFUSES TO COME INTO COMPLIANCE WITH THE AGREEMENT

63.

Upon learning that McDaniel was working with QUES, on October 12, 2022, Osmose sent McDaniel a letter demanding that she immediately cease and desist from any activity in violation of the Agreement, including entering into or continuing an employment or consulting relationship with QUES, and that she confirm that she is in compliance with the Agreement within five days of receipt of the letter.

64.

A true and accurate copy of the October 12, 2022, cease-and-desist letter is attached as Exhibit B.

65.

On October 24, 2022, through counsel, McDaniel replied to the cease-and-desist letter and denied all allegations.

66.

Due to McDaniel's ongoing, unlawful conduct, Osmose faces an immediate threat of continuing irreparable harm in the form of lost goodwill as well as present and future economic loss.

67.

All conditions precedent to this action have been performed, waived, or otherwise satisfied.

## COUNT I – BREACH OF CONTRACT

68.

Osmose incorporates by reference the allegations in paragraphs 1 through 67 above as if fully set forth herein.

69.

The Agreement is a valid and enforceable contract between McDaniel and Osmose.

70.

As discussed above, McDaniel has violated, and remains in violation of, the Non-compete by virtue of her employment with QUES.

71.

As discussed above, McDaniel has violated the Agreement by providing services that are competitive with those she provided for Osmose.

72.

As discussed above, upon information and belief, McDaniel has violated the Non-solicitation by soliciting Customer A's business on behalf of QUES.

73.

As more fully discussed above, upon information and belief, McDaniel has violated the Non-disclosure Provision by divulging and using Osmose's trade secrets and/or other valuable confidential information on behalf of QUES.

74.

McDaniel's ongoing breaches of the Non-compete, Non-solicitation, and Non-disclosure Provision are causing and will continue to cause irreparable harm to Osmose, including by harming Osmose's goodwill with customers and depriving Osmose of the competitive advantages derived from its trade secrets and/or other valuable confidential information.

75.

Osmose lacks an adequate remedy at law for such irreparable harm.

76.

Osmose is entitled to temporary, preliminary, and permanent injunctive relief to enjoin further breaches by McDaniel.

77.

McDaniel's breaches of the Agreement have also directly and proximately caused damage to Osmose. Osmose is also entitled to an award of all damages already caused by McDaniel's breach of the Agreement in an amount to be determined and proven at the time of trial.

78.

McDaniel has acted in bad faith, has been stubbornly litigious, and has caused Osmose unnecessary trouble and expense. Osmose is therefore entitled to an award of attorneys' fees and other expenses of litigation pursuant to O.C.G.A. § 13-6-11.

79.

Osmose is also entitled to an award of attorneys' fees and expenses of litigation pursuant to the prevailing party fees provision in the Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, Osmose prays of this Honorable Court as follows:

A.     For a temporary, preliminary, and permanent injunction against McDaniel enjoining her from further violating the Non-compete, Non-solicitation, and Non-disclosure Provision.

B.     That Osmose be awarded a judgment against McDaniel in an amount to be determined at trial;

C.     For an award of Osmose's costs, reasonable attorneys' fees, and other expenses of litigation; and

D.     For such other and further relief as this Court deems just, proper, and equitable under the circumstances.

Dated: November 18, 2022                Respectfully Submitted,

                                        BERMAN FINK VAN HORN P.C.

                                        By:     /s/ Kenneth N. Winkler
                                                Benjamin I. Fink
                                                Georgia Bar No. 261090
                                                Email: bfink@bfvlaw.com
                                                Kenneth N. Winkler
                                                Georgia Bar No. 770749
                                                Email: kwinkler@bfvlaw.com
                                                Daniel H. Park
                                                Georgia Bar No. 930188
                                                Email: dpark@bfvlaw.com
                                                3475 Piedmont Road NE
                                                Suite 1640

Atlanta, GA 30305
(404) 261-7711

*Counsel for Plaintiff*
*Osmose Utilities Services, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rules 7.1D and 5.1B, the undersigned counsel certifies that this document complies with the Local Rules' requirements as to font in that it has been prepared in Times New Roman, 14 point.

Dated: November 18, 2022

BERMAN FINK VAN HORN P.C.

By:   */s/ Kenneth N. Winkler*
       Kenneth N. Winkler
       Georgia Bar No. 770749

3475 Piedmont Road NE                    COUNSEL FOR PLAINTIFF
Suite 1640                                          OSMOSE UTILITIES SERVICES,
Atlanta, Georgia 30305                        INC.
(404) 261-7711
(404) 233-1943 (Facsimile)